UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ROBERT GIBBONS,

                       Petitioner,                    07 Cv. 3186 (CLB)

     - against -

                                                *Memorandum and Order*

RICHARD A. SAVAGE, Superintendent, etc.

                       Respondent.
----------------------------------------------------------x

Brieant, J.

      Before this Court for consideration is the counseled Petition of Mr. Robert Gibbons, a New York State prisoner who seeks a writ pursuant to 28 U.S.C. § 2254 setting aside his conviction in the County Court of Orange County on October 6, 2004. Following a jury trial, Petitioner was convicted of Rape in the Third Degree, Incest and Endangering the Welfare of a Child. The Petitioner describes sexual activities with his fifteen year old daughter as "consensual." However, she was by statute incapable of consenting and the consensuality was aided by the ingestion of alcohol.

      The incident occurred on October 2, 1999 in Orange County. The parents of the fifteen year old daughter (hereinafter the victim) were estranged and living apart. Her mother had custody and the father had visitation rights. He picked up the daughter from a sporting event at the high school and had intercourse thereafter at his residence. Later that same evening, the victim told her girlfriend, but she did not report the incident to the police or her mother until December 1, 2002.

      Counts Two and Four of the Indictment were dismissed prior to trial. Following the

customary pretrial proceedings and trial, on November 8, 2003, the jury returned a verdict convicting the Petitioner of all three remaining counts.

Thereafter, and prior to sentencing, Petitioner moved to set aside the verdict based among other things on claims of juror misconduct. The Court held an evidentiary hearing on May 13, 2004 on that issue and issued a written decision on August 2, 2004 denying the motion to the extent that it was based on juror misconduct, and a further decision in writing was issued on September 2, 2004 denying the balance of the motion.

On October 6, 2004, Mr. Gibbons was sentenced to concurrent indeterminate terms of two to four years for Rape and Incest and one year on the remaining misdemeanor count, all to run consecutively to an unrelated case under Indictment 2004-033 (*People v. Gibbons,* 27 A.D. 3d 483 - leave denied, 6 N.Y. 3d 894 (2006)).

The Petition in this case alleges the following grounds for relief: (1) that Petitioner's right to a public trial was violated; (2) that the misconduct of Juror No. 6 violated Petitioner's right to a fair trial and his right of confrontation; (3) that the trial court should have suppressed an incomplete tape recording and by failing to do so violated the Petitioner's right to a fair trial; (4) ineffective assistance of trial counsel.

The conviction was affirmed on direct appeal. *People v. Gibbons,* 18 A.D. 3d 773 (2005) and leave to appeal was denied by the New York Court of Appeals on September 28, 2005

(*People v. Gibbons*, 5 N.Y. 3d 828 (2005). Motions to Vacate were denied on January 18, 2006 by Judge DeRosa and on February 23, 2007, the Appellate Division denied leave to appeal. This Petition was filed on April 20, 2007 and is timely. Exhaustion of state remedies appears to have been accomplished. The Court now considers each of the separate grounds relied upon.

*Public Trial*

The trial was conducted in a small courtroom. The trial judge announced on the first day of jury selection that no spectators could be in the courtroom because there were insufficient seats for the jury panel and a spectator would have to sit next to a juror. This exclusion of spectators included Petitioner's mother. The judge insisted that the exclusion was standard practice because the spectator section holds sixty persons but seventy-five panelists are required. On the second day of jury selection, after the size of the panel had been reduced by excusals, the judge permitted the Petitioner's mother to be seated alone in the front row. Petitioner's counsel preserved his objection. Under the procedure being followed, the first day was largely ministerial and did not involve the exercise of peremptory strikes.

On direct appeal, the Appellate Division responded to this contention as follows:

During a portion of the *voir dire,* the court which found that there was insufficient seating in the courtroom, temporarily excluded the general public and the defendant's mother from the courtroom. Under these circumstances, the court did not deprive the defendant of his right to a public trial (citations omitted).

It does seem that it would have been possible to have allowed some members of the public including family of the defendant to remain in the courtroom, without intermingling with

the jurors. The jurors alone exceeded the lawful capacity of the courtroom under the fire code. A number of jury panelists apparently were standing during the early part of the selection proceedings. Regardless of what might have been, there was really nothing substantive being accomplished in the first day, except the purging of the panel for generalized excuses. Specifically, no disputed challenges for cause were ruled upon and no peremptory strikes were exercised. Obviously, no testimony was being taken.

This Court perceives this Constitutional violation, if any there be, to be minimal and hypertechnical. New York courts have held that there is discretion to temporarily limit access to the courtroom in order to limit overcrowding, to accommodate limited seating capacity and preserve order and decorum. *People v. Valentin,* 250 A.D. 2d 494 (1st Dept. 1998); *People v. Colon,* 71 N.Y. 2d at 416. This case is factually distinguishable from cases where judges exclude the public or members of the defendant's family while testimony of a particular witness is being
received, or where something else of a substantive nature is being accomplished. Petitioner relies on *English v. Artuz,* 164 F.3d 105 (2d Cir. 1998), a case in which the trial court was closed because a substantive witness said he feared for his life and was afraid that a co-defendant of English or his family would cause him to be murdered. Petitioner quotes *English* for the proposition that the doctrine of harmless error does not apply in circumstances involving unwarranted exclusion of a defendant's family members; doing so justifies *habeas corpus* relief, and petitioner need not show prejudice. See *English* at p. 108 of 164 F.3d 105. This would seem to be *dictum* and internally inconsistent. The exclusion occurred during a highly significant

testimonial portion of the trial. The same opinion also holds, citing *Ayala v. Speckard,* 131 F.3d 62 (2d. Cir. 1997) (*en banc*) that "the more extensive is the closure requested, the greater must be the gravity of the required interest and the likelihood of risk to that interest," thereby implying that where closure is minimal and occurs during a relatively unimportant part of the trial there may be no risk. The extensiveness and nature of the closure in this particular case is minimal to the point of *de minimis,* and should qualify as harmless error.

Petitioner has failed to prove that the holding of the Appellate Division with respect to this issue was a decision that was "contrary to or involved an *unreasonable* application of clearly established federal law as determined by the Supreme Court of the United States as required by § 2254(d)(1). Unreasonable, in this context, means more than just technically wrong, as it may be in light of *English.*

*Juror Misconduct*

Rule 606(b) Federal Rules of Evidence provides in relevant part as follows:

**Inquiry into the Validity of Verdict or Indictment.**

Upon an inquiry into the validity of a verdict or an indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent from the verdict or indictment or concerning a juror's mental processes in connection therewith.

This provision is Constitutional, and supports important public interests, including the freedom of deliberation, stability and finality of verdicts and protection of jurors against

annoyance and embarrassment. *McDonald v. Pless,* 238 U.S. 264 (1915). For purposes of federal *habeas* consideration, this Rule is a bar against what was sought to be done here.

In this case, immediately following the verdict, defense counsel interviewed several jurors in depth. Juror No. 10, Susan Rowe, submitted an affidavit at the Defendant's request asserting that she was a hold out, along with Juror No. 3 for a not guilty verdict, and that a fellow juror, Bill Diamond, Juror No. 6, had then explained to her that he was in the business (of video productions), it was what he does for a living and that he disagreed with the Defense's expert witness, James Sussman. He asserted the opinion that it would be extremely difficult to alter an audiotape and that if it were altered, the splices would be apparent. This expression was contrary to the testimony of Defense expert Sussman at trial and because of Diamond's claim of special expertise in the field, Ms. Rowe say she changed her vote, so as to convict.

The trial court held a CPL 330.30 hearing and rendered a written decision after that hearing, dated August 2, 2004, in which he found, in effect, that the juror was "completely incredible based upon the vague and convoluted nature of [her] testimony and also based upon the numerous glaring inconsistencies contained therein. Ms. Rowe was clearly having second thoughts about her verdict and was attempting to impeach it."

This decision was not based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, within § 2254(b)(2). In any event, the Federal Constitution as reflected in Rule 606 of the Federal Rules of Evidence does not require

such a hearing. This contention is not a basis for this Court to grant relief in this case.

*The Audiotape*

After the Police became informed of the commission of this crime, a state police investigator attempted to get the victim to telephone her father and tape admissions of criminality. It was clear that the first attempted to tape a conversation with Defendant was unsuccessful, because the victim failed to turn the "On" button. The second tape was admittedly incomplete, in that it did not cover the entire conversation. The Court had initially suppressed the second tape but on the eve of trial entertained an application by the prosecutor to authenticate the tape and made a proper foundation for its admissibility.

Defense counsel objected on the ground that the prosecutor had conceded that "tape does not reflect the entire conversation that took place." The tape was eighty-two seconds long and the actual conversation had extended for twenty minutes. The entire conversation could, of course, under traditional Rules of Evidence be testified to by the victim who was one of the participants. Probably to the extent that it was overheard by the state investigator, it could also be testified to by her. The Court concluded that the victim could testify to authenticate the tape without the necessity of showing that it was the entire conversation and that the tape would then be admissible, and the argument that it was incomplete would go only to the weight rather than admissibility.

On the defense case, expert witness James Sussman testified that the tape had a large

number of breaks and had been spliced and altered. The Appellate Division decision on direct appeal issued May 23, 2005, dealt with the tape issue as follows:

> During the trial, the court allowed the People to introduce into evidence an audiotape of a particular telephone conversation between the defendant and the complainant. Contrary to the defendant's contention, the People laid a proper foundation for the admission of the tape into evidence (citation omitted). The fact that there was a minor gap in the tape goes to the weight of the evidence, not its admissibility. (citations omitted)

This decision is not contrary to nor does it involve an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States. It is a valid decision based on the New York State Law of Evidence which does not differ materially from the Federal Rules of Evidence in this context. This issue is not a basis to grant the writ.

*Ineffective Assistance of Counsel*

The ineffective assistance claim is focused on the failure to call Defendant as a witness in his own behalf. Petitioner concedes that he knew that he had the right to take the stand if he wished to do so. It is also claimed that trial counsel did not adequately cross-examine or impeach the victim. No *Sparman* affidavit has been submitted. There was significant cross-examination with respect to motivation and inconsistencies and the long lapse of time before the victim told her mother.

It cannot be said that the exercise of judgment as to the extent of cross-examination of a vulnerable young person under the totality of these circumstances was below the standard required of *Strickland*. No showing is made that any particular element of cross-examination

would have altered the outcome of the trial.

Petitioner had admitted to the arresting officers that he had engaged in sexual intercourse with his daughter claiming only that it was consensual, which is an impossibility as a matter of law in light of her age.  No prejudice is shown from the failure to cross-examine more extensively nor does it appear on this record that further cross-examination would have altered the outcome of the trial.

Exposing Petitioner to cross-examination as to open issues in the case including the adequacy and authenticity of the tape recording would have been counter-productive.  This Court concludes that Defense counsel's advice that his client not testify represented a reasonable strategy under the circumstances, and while another attorney might have reached a different conclusion, the record does not demonstrate that the actions of this lawyer were so unreasonable as to deny Petitioner the effective assistance of counsel.

The Court does not perceive how any testimony Petitioner could truthfully give would have altered the outcome of the case.  Psychiatric records of the victim were highly unlikely to show her inability to recall the events or to perceive and remember them.   This is the primary purpose for which psychiatric records of a victim are used in state criminal cases.  Thus, the criticism of trial counsel for failing to obtain the confidential records in advance of trial cannot be regarded as inadequate performance in the context of this case.

The denial by the state court of this claim of ineffective assistance of counsel has not been shown to be contrary to or involve an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States, within the meaning of § 2254(d)(1).  In the context, as noted earlier "unreasonable" implies more than just being wrong.

This Court has reviewed all the claims made in this proceeding by Petitioner and finds no basis for a Constitutional violation in connection with his conviction and sentence.

The Petition is denied.  The Clerk shall file a final judgment.  However, because of the large number of significant Constitutional issues which are raised and the fact that reasonable persons could disagree with respect to the total effect of all these issues on the conviction, this Court will issue a Certificate of Appealability extending to all issues raised.  Petitioner may continue to proceed *in forma pauperis*.

SO ORDERED.

Dated: White Plains, New York
      July 13, 2007

                                                                                                 _____
                                                                               Charles L. Brieant, U.S.D.J.